F I L E D
United States Court of Appeals
Tenth Circuit

August 29, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

PATRICIA A. WILSON,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of Social Security,

      Defendant-Appellee.

No. 06-3352
(D.C. No. 02-CV-2114-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[**]

_____

Before **TACHA**, Chief Judge, **MURPHY** and **HOLMES**, Circuit Judges.

_____

Plaintiff-appellant Patricia A. Wilson appeals from an order of the district court affirming the Commissioner's decision denying her application for Social Security disability and Supplemental Security Income benefits (SSI).  Ms. Wilson

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne B. Barnhart as appellee in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

filed three sets of applications for a period of disability, disability insurance benefits, and supplemental security income. All three sets alleged that she had been disabled since December 7, 1995. Ms. Wilson alleged a number of limitations in her various applications and at the hearings on those applications, including bilateral carpal tunnel syndrome, diabetes mellitus, and depression. The agency denied all her applications initially and on reconsideration.

Her first set of applications was filed on April 24, 1996. Following a hearing, this set of applications was denied by an administrative law judge ("ALJ") on September 16, 1997 ("1997 Decision"), and the appeals counsel denied review. Appeal to the district court was not taken.

Her second set of applications was filed on May 8, 1998. Following a hearing, this set of applications was denied by an ALJ on December 17, 1999 ("1999 Decision"). Part of the 1999 Decision was a determination that the 1997 Decision was res judicata for the period of time from December 7, 1995, through September 16, 1997. On February 18, 2000, Ms. Wilson requested appeals council review.

On July 3, 2000, while this request was pending, Ms. Wilson filed her third set of applications.

On February 15, 2002, the appeals counsel denied review of the 1999 Decision. On March 13, 2002, Ms. Wilson filed a complaint with the district court, appealing the 1999 Decision.

On January 9, 2003, a hearing was held before an ALJ on Ms. Wilson's third set of applications. At that hearing, part of the evidence presented by Ms. Wilson was a report by a clinical psychologist, Dr. Franklin Boraks, containing the results of a Wechsler Adult Intelligence Scale test (WAIS-III) and a Wechsler Memory Scale test he administered on November 26, 2002. The WAIS-III showed that Ms. Wilson had a verbal I.Q. score of 65, a performance I.Q. score of 58, and a full scale I.Q. score of 59. Admin. R. at 766. Dr. Boraks' report reflected that Ms. Wilson complained of "pain and overwhelming sadness accompanied by tears as well as remaining in bed, unwilling to arise." *Id*. at 765. Dr. Boraks' report concluded:

> The clinical picture is of a Major Depression which has caused significant interference in all areas of cognitive functioning. Intelligence test scores are into the retarded range. Memory is impaired. With structure and support, there was sufficient motivation present so that the findings are thought to be valid. Work style is noted to be persistent but at a slower than average pace.

*Id*. at 767.

On March 3, 2003, Ms. Wilson filed a motion with the district court asking it to remand the 1999 Decision to the Commissioner for consideration of Dr. Boraks' report under sentence six of 42 U.S.C. § 405(g).[1] Ms. Wilson alleged

---

[1] Sentence six of 42 U.S.C. § 405(g) reads:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of

(continued...)

that the report "show[ed] that [she was] in fact retarded" and, therefore, that she was disabled because she met listing 12.05C for mental retardation[2] at step three of the five-step sequential process.[3]  R., Doc. 19 at 2.

---

[1](...continued)

Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

[2]     Listing 12.05 is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The capsule definition for mental retardation under listing 12.05 is:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

In addition to meeting the above definition, a claimant must also meet one of four severity prongs for the listing.  One of the prongs is:  "A valid verbal, performance, or full scale IQ of 59 or less"; another is:  "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id*.

[3]     The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  The

(continued...)

On March 14, 2003, the ALJ issued a partially favorable decision on Ms. Wilson's third set of applications ("2003 Decision"). The ALJ found that Ms. Wilson was disabled starting December 31, 2001, but not prior thereto. The ALJ found that as of December 31, 2001, Ms. Wilson's physical limitations became worse in that she could only stand for two hours during the work day, and could sit for six and had additional mental dysfunction. The ALJ also found that there was evidence showing that Ms. Wilson had been diagnosed with major depression in 2002, which was "severe and limits claimant at a moderate level but is not at any listing level of severity." Admin. R. at 747.

_____

[3](...continued)

> claimant bears the burden of establishing a prima facie case of disability at steps one through four. Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work.

> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and internal quotation marks omitted).

The ALJ determined that Ms. Wilson did not meet the requirements of listing 12.05 because there was no evidence showing an onset of mental retardation prior to age twenty-two as required by the limitation. The ALJ found that the low IQ scores from 2002 were inconsistent with the remainder of the record which showed that Ms. Wilson graduated from high school and also graduated from a six month computer training program at a business college.[4] The ALJ also noted that the record contained previous testing showing

> reading comprehension at a grade equivalent level of 8.2, which is the 38[th] percentile. This is far above the mentally retarded range. There is a spelling grade equivalent of 4.9, which is at the 13% level and math ability was grade 7.4 equivalent, which is the 18% level.

*Id*. at 742. On August 15, 2003, the appeals counsel denied Ms. Wilson's request for review of the ALJ's partially favorable decision and no appeal was taken to the district court.

On March 20, 2003, after the ALJ's partially favorable 2003 Decision but prior to the appeals counsel's denial of review, the district court remanded Ms. Wilson's appeal of the 1999 Decision. The district court ordered:

> Upon remand the ALJ shall evaluate the new and material evidence which shows that Plaintiff has received I.Q. scores which may be consistent with mental retardation. The ALJ shall evaluate the effect that affective disorder may have had on plaintiff's cognitive and memory processes. The ALJ shall also fully evaluate plaintiff's affective disorder and determine whether she became disabled prior

---

[4] Although Ms. Wilson never worked in a computer-related field, the record shows that she worked approximately 16 years as a "dial repair tester," Admin. R. at 902, and for approximately 8 years in a meat-packing plant.

to the date her insured status was last met, and whether reopening of the prior determinations or decisions is required.

*Id*. at 759.

On December 15, 2004, the ALJ issued an unfavorable decision on remand of the 1999 Decision. The ALJ again held that the 1997 Decision was res judicata as to Ms. Wilson's claims of disability for the period from December 7, 1995, through September 16, 1997. The ALJ also held that the 2003 Decision was res judicata as to Ms. Wilson's claims of disability for the period from December 18, 1999, through March 14, 2003. Thus the time period at issue in regard to the second set of applications was September 17, 1997, through December 17, 1999. The ALJ recognized that Dr. Boraks' report had been previously considered in the 2003 decision. The ALJ agreed with the 2003 Decision that there was no evidence to show an onset of mental retardation prior to age twenty-two and held that Dr. Boraks' findings as to Ms. Wilson's major depression in 2002 had no probative value for the time period at issue. The ALJ therefore again denied disability and the appeals counsel denied review.

Upon return to the district court, the case was assigned to a magistrate judge whose subsequent report and recommendation affirming the Commissioner's decision was adopted by the district court as its own. Ms. Wilson has filed a pro se appeal from the district court's decision.

Normally, we review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

Here, however, we are hamstrung by Ms. Wilson's failure to follow the rules of appellate procedure in filing her appellate brief. *See* Fed. R. App. P. 28. We have said, generally, regarding pro se appellants:

> Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants. Thus, although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.

*Garrett v. Selby Connnor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citations, internal quotation marks, and brackets omitted).

Having this court serve as her attorney is apparently exactly what Ms. Wilson has in mind. In her "Statement of Facts Relevant to the Issues Presented for Review," she simply asks that this court "go over the case from the

begin[ning] to end. Thank you 'Back Pay.'" Aplt. Br. at 2. In the "statement of the case" section of her brief, Ms. Wilson has simply written: "Back Pay go 8 years 1995 Dec 07 ———————————." *Id.* at 2. Likewise, her statement of the issues consists simply of the words "Back Pay" for each issue. *Id.* at 3. As to whether she believes the district court applied the wrong law she states, "Yes they should [have] applied the law." *Id.* at 4. The content of the remaining sections of her brief is similarly succinct. *Id.* at 4.

It does not appear that any specific legal or factual decision is under attack; Ms. Wilson is simply dissatisfied with the ultimate outcome of the denial of disability between December 7, 1995, and December 31, 2001. Because we cannot serve as Ms. Wilson's attorney, we refuse to accept her invitation to "go over the case from the begin[ning] to end," *id.* at 4, especially considering the fact that two of the Commissioner's decisions covering a large portion of the time period of which she complains were not appealed to federal court.

Nevertheless, we are cognizant both that, as noted above, pro se briefs are to be liberally construed, and that the record contains evidence that Ms. Wilson received low I.Q. test scores in 2002 and was diagnosed with major depression. We are also aware that at least one circuit has, in unpublished cases, construed deficient pro se appellate briefs in social security cases as re-raising the same arguments the appellant raised to the district court. *See Newsom v. Soc. Sec.*

*Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004); *Schauf v. Sec'y of Health and Human Servs.*, No. 93-5658, 1993 WL 515491, at *1 (6th Cir. Dec. 10, 1993).

But this is not the occasion to make court policy as to what our appropriate course of action should be in this type of case. Here, we have examined the record and have determined that even if we were to construe Ms. Wilson's brief as raising the same arguments her previous counsel raised to the district court, affirmance would be required for substantially the reasons set forth in the magistrate judge's report and recommendation adopted by the district court.

Consequently, the judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge